No. 26-1793

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

KELLY DAWSEY,
Plaintiff-Appellee,

v.

BMW MANUFACTURING CO., LLC,
Defendant-Appellant.

On Appeal from the United States District Court
for the District of South Carolina

# BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AS AMICUS CURIAE IN SUPPORT OF APPELLEE AND IN FAVOR OF AFFIRMANCE

CHRISTOPHER LAGE
Deputy General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

JEREMY D. HOROWITZ
Assistant General Counsel

JAMES DRISCOLL-MACEACHRON
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(602) 661-0014
james.driscoll-maceachron@eeoc.gov

# TABLE OF CONTENTS


Table of Authorities ........................................................................ ii

Statement of Interest ........................................................................ 1

Statement of the Issues ........................................................................ 2

Statement of the Case ........................................................................ 2

A. Statement of the Facts ........................................................................ 2

B. District Court Proceedings ........................................................................ 9

Argument ........................................................................ 11

I. The district court correctly denied judgment as a matter of law on the national origin discrimination claim. ........................................................................ 11

A. There was sufficient evidence that the notice of transfer was an adverse employment action. ........................................................................ 13

B. There was sufficient evidence that the transfer caused "some harm." ........................................................................ 17

C. There was sufficient evidence that the harm was not speculative. ........................................................................ 19

II. The district court correctly denied judgment as a matter of law on punitive damages ........................................................................ 23

Conclusion ........................................................................ 29

Certificate of Compliance ........................................................................ 31

Certificate of Service ........................................................................ 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almond v. Unified Sch. Dist. No. 501*,
665 F.3d 1174 (10th Cir. 2011) ....................14, 20

*Alvarado v. Tex. Rangers*,
492 F.3d 605 (5th Cir. 2007) ....................22

*Aquilino v. Univ. of Kan.*,
268 F.3d 930 (10th Cir. 2001) ....................21

*Brinkley-Obu v. Hughes Training, Inc.*,
36 F.3d 336 (4th Cir. 1994) ....................12, 24

*Burgess v. Goldstein*,
997 F.3d 541 (4th Cir. 2021) ....................12

*Chardon v. Fernandez*,
454 U.S. 6 (1981) (per curiam) ....................14

*Del. State Coll. v. Ricks*,
449 U.S. 250 (1980) ....................13, 14, 15, 16

*Duvall v. Novant Health, Inc.*,
95 F.4th 778 (4th Cir. 2024) ....................27

*EEOC v. Consol Energy, Inc.*,
860 F.3d 131 (4th Cir. 2017) ....................27, 28

*EEOC v. Fed. Express Corp.*,
513 F.3d 360 (4th Cir. 2008) ....................24, 25, 26

*EEOC v. SkyWest Airlines, Inc.*,
181 F.4th 536 (5th Cir. 2026) ....................24, 26, 29

*EEOC v. Wal-Mart Stores, Inc.*,
187 F.3d 1241 (10th Cir. 1999) ....................25

*English v. Whitfield*,
858 F.2d 957 (4th Cir. 1988) ....................................................................15

*Fowler v. AT&T, Inc.*,
19 F.4th 292 (3d Cir. 2021) ..................................................................14, 16

*Gabriel v. DSM Biomedical, Inc.*,
187 F.4th 77 (3d Cir. 2026) .......................................................................23

*Gautier v. Tams Mgmt., Inc.*,
163 F.4th 786 (4th Cir. 2026) .....................................................................2

*Green v. Brennan*,
578 U.S. 547 (2016) .................................................................................14

*Herkert v. Bisignano*,
151 F.4th 157 (4th Cir. 2025) .....................................................................17

*Lowery v. Cir. City Stores, Inc.*,
206 F.3d 431 (4th Cir. 2000) ..................................................................25, 29

*Magassouba v. Prince George's Cnty.*,
773 F. Supp. 3d 196 (D. Md. 2025) .........................................................20

*Milczak v. Gen. Motors, LLC*,
102 F.4th 772 (6th Cir. 2024) .....................................................................22

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024) ............................................................................*passim*

*Ortiz-Diaz v. U.S. Dep't of Hous. & Urb. Dev.*,
867 F.3d 70 (D.C. Cir. 2017) .....................................................................20

*Paterakos v. City of Chi.*,
147 F.4th 787 (7th Cir. 2025) .....................................................................23

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) ...............................................................................12, 19

*Shultz v. Congregation Shearith Israel of City of New York*,
867 F.3d 298 (2d Cir. 2017) .......................................................................14

*Singletary v. Howard Univ.*,
939 F.3d 287 (D.C. Cir. 2019)....................15, 16

*Thomas v. JBS Green Bay, Inc.*,
120 F.4th 1335 (7th Cir. 2024)....................18, 19

*Thomsen v. Romeis*,
198 F.3d 1022 (7th Cir. 2000)....................21

*Van Horn v. Del Toro*,
No. 23-5169, 2024 WL 4381186 (D.C. Cir. Oct. 3, 2024)
(per curiam)....................14, 15, 17

*Walsh v. HNTB Corp.*,
169 F.4th 330 (1st Cir. 2026)....................18, 19

*Wantou v. Wal-Mart Stores Tex., L.L.C.*,
23 F.4th 422 (5th Cir. 2022)....................26

*Zienni v. Mercedes-Benz U.S. Int'l, Inc.*,
No. 24-13932, 2025 WL 3708825 (11th Cir. Dec. 22, 2025)
(per curiam)....................21

**Statutes**

42 U.S.C. § 1981a....................1

42 U.S.C. § 1981a(b)(1)....................24

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*....................*passim*

42 U.S.C. § 2000e-2(a)(1)....................17

**Other Authorities**

Fed. R. App. P. 29(a)....................1

## STATEMENT OF INTEREST

The Equal Employment Opportunity Commission is the primary agency charged by Congress with administering and enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, which prohibits workplace discrimination based on, *inter alia*, national origin. The jury here found BMW Manufacturing ("BMW MC") discriminated against an American employee based on her national origin when it notified her that she would be transferred to make room for a German employee. It also awarded punitive damages under 42 U.S.C. § 1981a, the section of the Civil Rights Act of 1991 that sets out the standard for awarding punitive damages in Title VII cases. On appeal, BMW MC argues the notice of transfer was not an adverse action under Title VII and that the standard for awarding punitive damages was not met. Because these issues are important to the effective enforcement of Title VII, and because the EEOC disagrees with the legal arguments BMW MC advances on these issues, the EEOC offers its views to the Court. *See* Fed. R. App. P. 29(a).

## STATEMENT OF THE ISSUES[1]

1. Did the district court correctly deny BMW MC's request for judgment as a matter of law on the adverse action element of Dawsey's national origin discrimination claim where the jury had evidence that BMW MC unequivocally told Dawsey she would be transferred and that the consequences of the transfer would cause some harm to Dawsey?

2. Did the district court correctly deny BMW MC's request for judgment as a matter of law on punitive damages where there was evidence that a BMW MC decisionmaker discriminated against Dawsey based on national origin while being aware of BMW MC's policy prohibiting national origin discrimination?

## STATEMENT OF THE CASE

### A. Statement of the Facts[2]

Kelly Dawsey worked for BMW MC, which operates the BMW automobile manufacturing plant in Spartanburg, South Carolina. JA341,

---

[1] The EEOC takes no position on any other issue raised in this appeal.

[2] As Dawsey prevailed below, the facts are recited "in the light most favorable" to her. *Gautier v. Tams Mgmt., Inc.*, 163 F.4th 786, 790 (4th Cir. 2026).

352.[3] Dawsey worked for BMW MC for more than twenty-five years, rising to the level of Department Manager in Human Resources. JA341, 347, 563. In that position, she supervised compensation, benefits, organizational structure, and human resources planning for the future. JA348-49, 2081-82. She supervised approximately fifteen employees and reported directly to the Vice President of Human Resources. JA348, 360.

BMW MC positions, including Dawsey's, were each given an alphanumeric code. Positions beginning with "TX" were at the Spartanburg plant, and a numeric code identified the department. JA354. Dawsey's position was labeled "TX-60," reflecting that Dawsey worked at Spartanburg and reported to TX-6, the code for the Vice President of Human Resources. JA347, 358-59, 2069, 2081. BMW MC positions also have function levels that describe their importance: the president of BMW MC was the only function level one, while vice presidents were function level two, department managers were function level three, and managers were function level four. JA357, 497, 2091-92. As a Human Resources

[3] Citations to the joint appendix take the form "JA_." Citations to the briefs on appeal take the form "Dkt._."

Department Manager at the Spartanburg plant, Dawsey was a function level three. JA358, 401, 2081. BMW MC employees also received a personal grade that reflected their experience and performance. JA398, 2203. Those grades ranged from two at the lowest up to fifteen. JA2203. Dawsey's personal grade was eleven—the highest she could receive before becoming a vice president. JA499, 563-64, 1323, 1367.

During most of the relevant time, Dawsey reported to Christine Petrasch, Vice President of Human Resources. JA355-56, 947-49. Petrasch is German and was on an international assignment from Germany. JA459, 485, 1064. Dawsey, who is American, learned in 2021 that Petrasch would be returning to Germany and that the Human Resources department would be reorganized. JA337, 457-460. In late September, Petrasch told Dawsey that an American employee named Sherry McCraw would be replacing Petrasch as Vice President of Human Resources. JA460, 474. The new president of BMW MC, Robert Engelhorn, also wanted to bring an employee named Eva Burgmeier from Germany to the BMW MC human resources team. JA824-25, 1073.

Petrasch told Dawsey about the upcoming reorganization. In doing so, she referenced the "rule that if the Vice President of Human Resources

was a domestic or a local [i.e., an American] . . . the next line of leadership in Human Resources would have to have a German." JA423, 474-77. At that time, Petrasch did not know if Burgmeier would be the TX-60, TX-61, or TX-64. JA474. Soon after that, however, Petrasch told Dawsey that Burgmeier would be replacing Dawsey as TX-60, and that it was "done." JA476-77, 2079.

Replacing Dawsey with Burgmeier—and Petrasch's explanation of why BMW MC made that change—reflected BMW MC's "Expat Guidelines for Plant Spartanburg."[4] JA480-82, 2126-40. Under that directive, an international Vice President of Human Resources required a domestic TX-60,[5] and vice-versa.[6] JA2131. As a coworker said, it was "the normal practice that when you have a domestic [TX-6] you try to put an

---

[4] BMW MC contested the admission of these guidelines below, JA2051-54, but does not raise the issue again on appeal. *See* Dkt.17.

[5] When the policy was developed, BMW MC used "TS-" coding, rather than "TX-," for the Spartanburg plant. *See* JA354. Dawsey was also TS-60 at BMW MC. JA2226.

[6] Years earlier, Dawsey told Johannes Trauth, the previous Vice President of Human Resources, that BMW MC could not "slot positions based on national origin." JA488. The jury heard testimony that Trauth did not change the guidelines in response to Dawsey's warning and that, according to Dawsey, BMW MC had not revoked them during the relevant period. JA482-83.

international [TX-60] so you can keep your tie-ins . . . on the German—on the international side and keep your tie-in on the American side." JA1203-04. At the time of trial, the last five pairings of TX-6 and TX-60 had complied with this company rule. JA489-91, 896. Thus, Petrasch told Dawsey, "the only way to get a local in TX-6[] is to have an international in TX-60 to be a bridge to Germany." JA476, 2281. Because McCraw was American, the TX-60 would have to be German—as Burgmeier was. *See* JA476-77, 2281.

Petrasch initially said she was trying to move Dawsey to a TX-61 position to "maintain [Dawsey's] function level three." JA477. In October 2021, however, Petrasch told Dawsey that BMW MC would be moving Dawsey to the TX-64 position. JA493. And, though TX-64 was a function level three at the time, the TX-64 would be lowered to function level four.[7] *See* JA506, 513, 517-18.

BMW MC then announced the imminent reorganization, including Dawsey's transfer to TX-64, in presentations to the human resources

[7] After the reorganization was complete, the next two employees BMW MC placed in the TX-64 were designated function level four. JA1206, 1398-1401.

managers in November and to human resources staff in December. JA535-36. A coworker testified that, based on the November meeting, he was certain Dawsey would be the next TX-64. JA1191-92. The reorganization was scheduled for February 2022. JA1016.

Moving to the TX-64 at a function level four, the jury heard, would change Dawsey's role. JA751 (Dawsey testifying that Petrasch told her she "was going to a function level four, that is a demotion"). As noted above, a function level four position was a manager, while a function level three was a department manager. JA497. Function level three positions typically supervised more areas and had a "broader scope" of responsibility than function level four. JA497, 2091-92. The move also threatened to impact Dawsey's compensation. JA507-11. BMW MC matched certain personal grades to function levels, JA400, 2094, 2104, and the jury heard testimony that employees with higher personal grades placed into lower function levels would have their personal grade adjusted downward. JA501-05, 2149. Personal grade, in turn, impacted the employee's compensation, including bonuses and benefits. JA499-500, 508-10, 569. A function level four position, like Petrasch told Dawsey the TX-64 would be, had a personal grade cap of ten. JA503-06, 2104. Dawsey, who had a personal

grade of eleven, therefore expected to be downgraded if she moved to TX-64. JA501-07. That, she testified, would include losing the ability to receive raises like she had as a TX-60. JA508-09.

The change would also affect her promotion potential. JA511. In 2019, Dawsey learned that she was under consideration for promotion to TX-6, a vice-president-level position. JA422-23; *see also* JA345-46 (Dawsey testifying that she previously "had been told that I was in consideration for next level vice president"). The then-President of BMW MC recommended that she "take on [a] more visible project so that [she] could be visible to Germany." JA422-23. And the Vice President told her that "there was some interest in having a local or a domestic TX-6" and she "was being considered and reviewed for that position." JA423. If she moved to the function level four TX-64 position, however, such a promotion would be unavailable. JA511-12, 1519. Dawsey was unaware of any function level four employees being promoted to a function level two vice president position—or, indeed, of anyone moved from function level three to four who had ever returned to function level three. JA511-12; *see also* JA1519 (Burgmeier "never heard or [did not] know a case" of employee moving from function level four to the vice president level).

As a result, when Petrasch told Dawsey she would be moved, Petrasch told her to "take this very seriously." JA494. She advised Dawsey to "find another job" outside the human resources department and said BMW MC "honestly do[es] not deserve you." *Id.*

Dawsey had contacted a recruiter before Petrasch told her that the reorganization would affect her, but she had not yet decided to leave BMW MC. JA545-46. After she learned of her transfer, however, Dawsey took the "top level position in Human Resources" at another company. JA548-51. She resigned from BMW MC on January 3, 2022, before the reorganization was complete. JA551-53, 1901.

**B. District Court Proceedings**

Dawsey filed this lawsuit, alleging that BMW MC violated Title VII by discriminating against her based on her national origin, among other claims. JA154-55. After the district court denied summary judgment, JA200-18, the case proceeded to a seven-day jury trial. JA134-35.

The jury found that BMW MC discriminated against Dawsey based on her national origin in violation of Title VII and awarded her $100,000 in

compensatory damages and $5 million in punitive damages. JA1865, 1867. The district court reduced those awards to the statutory cap.[8] JA2, 2034-35.

BMW MC moved for judgment as a matter of law on the national origin claim and the punitive damages award. JA2038-58. On the national origin claim, BMW MC argued that Dawsey had not shown an adverse action that would support the jury's verdict. JA2045-51. As to punitive damages, it argued that Dawsey did not show a decisionmaker perceived a risk that the company's actions violated federal law, so no reasonable jury could find it had acted with the necessary malice or reckless indifference. JA2040-45.

The district court denied BMW MC's motion in its entirety. JA66-77. Beginning with punitive damages, the court held that the testimony and evidence were sufficient to support the jury's verdict. JA69-72. Turning to the national origin verdict, the court held that *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), the recent Supreme Court decision establishing the standard for adverse employment actions in Title VII discrimination cases, "was correctly applied in this case," and that "a reduction in pay is not

[8] The district court separately awarded $389,907 in backpay. JA22.

required [for] . . . an adverse employment action." JA73. It held that there was evidence that moving Dawsey "would have adverse impacts on her," emphasizing that "[m]uch of this evidence consisted of BMW's own records and its function level descriptions and other documents." *Id.* Similarly, it observed that there was evidence that being "placed at a function level four position would impact an employee's ability to advance to . . . function level two." JA73-74.

**ARGUMENT**

In its opening brief, BMW MC argues that the district court should have entered judgment as a matter of law in its favor on the adverse action element and the punitive damages award. But it fails to meet the high standard for setting aside a jury's verdict, and, on both issues, the jury received sufficient evidence to support its verdict.

**I. The district court correctly denied judgment as a matter of law on the national origin claim.**

BMW MC attacks the verdict on Dawsey's national origin discrimination claim based solely on the adverse action element, but it does not grapple with the standard of review, and it misconstrues both the law

and the evidence adduced at trial. Viewed under the proper standards, there was enough evidence to support the jury's verdict.

When faced with the denial of a Rule 50 motion for judgment as a matter of law, the "standard of review is important." *Burgess v. Goldstein*, 997 F.3d 541, 549 (4th Cir. 2021). While review is de novo, this Court will review "with deference towards the jury's findings." *Id.* Like all federal courts, this Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Moreover, "it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151. When arguing that the evidence was insufficient to support the verdict, as BMW MC does here, *see, e.g.*, Dkt.17 at 28, the moving party bears "an extremely heavy burden in challenging the jury's verdict." *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 351 (4th Cir. 1994).

BMW MC does not satisfy that burden here. The district court instructed the jury that an adverse employment action "occurs when an employer provides notice of or communicates a future action to the employee if . . . the notice was of a non[-]speculative disadvantageous

change in an employment term or condition." JA1806. BMW MC does not challenge that instruction, and the jury received evidence sufficient to satisfy each of its component parts. The notice of transfer was the adverse action because BMW MC informed Dawsey that her transfer to the TX-64 position was "done." JA476-77. The consequences of the transfer, meanwhile, were enough to meet the *Muldrow* standard for adverse actions. And, while BMW MC argues that the harm was speculative, it cannot carry its burden on that argument because the jury heard evidence that harm would follow Dawsey's transfer.

### A. There was sufficient evidence that the notice of transfer was an adverse employment action.

Almost fifty years ago, the Supreme Court held that a discriminatory act occurs when an employer communicates its decision to take an adverse employment action to an employee, even if the decision does not go into effect until later. *Del. State Coll. v. Ricks*, 449 U.S. 250, 254, 262 (1980). In *Ricks*, the plaintiff was a professor who alleged that his employer discriminatorily denied him tenure. The Court held that the discriminatory act "occurred . . . at the time the tenure decision was made and communicated to Ricks." *Id.* at 258. That held true "even though one of the

*effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later." *Id.* The Supreme Court then reaffirmed this holding in several non-tenure cases. *See Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (per curiam) ("[T]he proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful. The fact of termination is not itself an illegal act." (citation omitted)); *Green v. Brennan*, 578 U.S. 547, 564 (2016) ("[A]n ordinary wrongful-discharge claim accrues . . . when the employer notifies the employee he is fired, not on the last day of his employment.").

While this rule arose in the context of statutes of limitations, it also applies to the substantive issue of what constitutes an adverse action. *See, e.g.*, *Fowler v. AT&T, Inc.*, 19 F.4th 292, 300 (3d Cir. 2021) ("[I]t is a small and logical step to so hold."); *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 307 (2d Cir. 2017). The D.C. Circuit, for example, relied on the *Ricks* rule in holding that a notice of transfer was an adverse employment action. *Van Horn v. Del Toro*, No. 23-5169, 2024 WL 4381186, at *2-3 (D.C. Cir. Oct. 3, 2024) (per curiam).

All that is generally required is that the final decision be communicated to the plaintiff. *See Ricks*, 449 U.S. at 258; *Almond v. Unified*

*Sch. Dist. No. 501*, 665 F.3d 1174, 1177 (10th Cir. 2011) (Gorsuch, J.) ("[A] claim accrues when the disputed employment practice—the demotion, transfer, firing, refusal to hire, or the like—is first announced to the plaintiff."); *see also English v. Whitfield*, 858 F.2d 957, 961 (4th Cir. 1988) ("[T]he *Ricks–Chardon* rule is premised on an employee's having been given final and unequivocal notice of an employment decision having delayed consequences."). If it was unequivocally communicated, it does not matter if the decision was "never effectuated" because the employee opted to leave rather than stay and await the inevitable. *Van Horn*, 2024 WL 4381186, at *3. In *Van Horn*, for example, the D.C. Circuit held that two proposed transfers were adverse actions even where the plaintiff took leave and then retired rather than accepting the transfers. *Id.*; *see also Singletary v. Howard Univ.*, 939 F.3d 287, 294, 299-300 (D.C. Cir. 2019) (the plaintiff's departure was not a "voluntary resignation" because "[s]he left only *after* she was told that she was being terminated" effective later that year); *cf. Ricks*, 449 U.S. at 260-62 (existence of grievance or appeal process does not affect date of adverse action, even where grievance process could potentially undo the action).

Here, the jury heard evidence that the notice of transfer was the relevant adverse action for Dawsey's claim. Indeed, BMW MC does not argue otherwise—nor could it, as Dawsey testified that Petrasch told her that the decision to transfer her was "done."[9] JA476-77, 2079. Petrasch also told Dawsey she would be moved to function level four. JA506, 517-19. BMW MC then explained the reorganization (including Dawsey's transfer) to its human resources managers in November 2021, and to the entire human resources department in December 2021. JA535-36. As one of Dawsey's coworkers explained, the November meeting left no "question in [his] mind" that Dawsey "would be in 64." JA1192.

Those unambiguous announcements were enough to establish an adverse employment action, even if the transfer—and the negative effects flowing from the transfer—had not yet occurred. *See Ricks*, 449 U.S. at 258; *Singletary*, 939 F.3d at 300. Dawsey's resignation before the transfer, meanwhile, does not affect BMW MC's liability. *See Fowler*, 19 F.4th at 300;

[9] In its brief, BMW MC concedes that Petrasch told Dawsey about "the final decision that Dawsey would be transferred to the TX-64 job." Dkt.17 at 18.

*see also Van Horn*, 2024 WL 4381186, at *3 (notice of transfer was adverse action "no matter that Van Horn . . . retired rather than relocate").

**B. There was sufficient evidence that the transfer caused "some harm."**

Title VII bars discrimination in the "terms, conditions, or privileges of employment" because of, *inter alia*, "national origin." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court clarified that, under that provision, a plaintiff need only show "some harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 354-55. That standard encompasses more than "economic or tangible" harms. *Id.* at 354 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)). The action need only cause "some disadvantageous change in an employment term or condition." *Id.* (internal quotation marks omitted).

A wide variety of employment actions may satisfy that expansive standard. A jury can find diminished supervisory authority causes "some harm." *Muldrow*, 601 U.S. at 356 (describing a principal "forced into a non-school-based administrative role supervising fewer employees" as an example of a sufficient injury); *Herkert v. Bisignano*, 151 F.4th 157, 165 (4th Cir. 2025) (holding that whether "loss of supervisory authority" was

sufficient "is a context-specific inquiry . . . that . . . is for a jury to assess"). Adverse effects on promotion potential also satisfy that standard. *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1337 (7th Cir. 2024) (acknowledging "some harm" from "deferred promotions"); *Walsh v. HNTB Corp.*, 169 F.4th 330, 340 (1st Cir. 2026) (reasoning that a performance improvement plan may be an adverse action when it "deprive[s] an employee of potential advancement opportunities").

Here, the jury heard testimony and saw evidence sufficient to meet that standard. Dawsey testified that Petrasch told her the transfer would move her down to function level four, and other witnesses testified that the two employees subsequently hired into the TX-60 after the reorganization were both function level four. JA1206, 1398-1401, 2186, 2285. The jury could reasonably have concluded that Dawsey's downgraded function level would affect her job duties, the scope of her supervisory authority, her compensation, and her promotion potential. JA497-512.

BMW appears to disregard the standard of review, asking this Court to instead credit contrary testimony. It argues, for example, that Petrasch denied telling Dawsey that she would be moved to function level four. Dkt.17 at 22-23 (citing JA1006). But the jury was "not required to believe"

Petrasch's testimony. *Reeves*, 530 U.S. at 151. Nor was it required to credit other testimony from BMW MC's witnesses suggesting reasons Dawsey's personal grade may not have been downgraded. *See id.* at 150-51. Drawing all reasonable inferences in Dawsey's favor, a reasonable jury could conclude that she suffered some harm.

### C. There was sufficient evidence that the harm was not speculative.

BMW MC focuses much of its argument on whether Dawsey's harm was speculative, but it conflates speculative harm with foreseeable consequences from current actions. Here, the jury heard evidence from which it could conclude that Dawsey would suffer predictable harm from BMW MC's decision to transfer her. That is sufficient to show an adverse employment action.

Future consequences linked to an employment decision may establish an adverse action. *See, e.g.*, *Thomas*, 120 F.4th at 1337 ("Deferred training can mean deferred promotions or deferred raises."); *Walsh*, 169 F.4th at 340 (observing that a performance improvement plan's effects on future promotion opportunities could be sufficiently concrete to constitute an adverse action under *Muldrow*). Indeed, courts have

considered future consequences as part of an adverse action since long before *Muldrow*. *See Almond*, 665 F.3d at 1177 (noting that "adverse employment actions can involve entirely deferred consequences" and that it does not matter if "the adverse consequences flowing from the challenged employment action hit the employee straight away or only much later"); *Ortiz-Diaz v. U.S. Dep't of Hous. & Urb. Dev.*, 867 F.3d 70, 75 (D.C. Cir. 2017) (denial of transfer constituted sufficient harm when transfer "would have improved the likelihood that [plaintiff's] career could advance based solely on merit"); *see also Magassouba v. Prince George's Cnty.*, 773 F. Supp. 3d 196, 214 (D. Md. 2025) (holding that reprimands were adverse actions because they "could have resulted in adverse notes in Plaintiff's personnel file, which in turn could have limited his future opportunities for professional growth").

The jury heard evidence that the transfer to TX-64 had foreseeable adverse consequences. As discussed above, Petrasch told Dawsey it would be a function level four position. JA506. She would thus have narrowed supervisory authority and diminished responsibility, ultimately receive reduced compensation, and lose the ability to be promoted to function level two. JA497, 508-12, 2091-92, 2103-05. These consequences were not

conjectural; they flowed directly from BMW MC policies and practices that the jury could consider in determining whether an adverse action occurred. *See* JA400-01, 499-500, 508-12, 2094, 2103-05, 2149.

In arguing to the contrary, BMW MC relies on out-of-circuit cases that do not apply here. *Aquilino v. University of Kansas*, 268 F.3d 930, 936 (10th Cir. 2001), is a pre-*Muldrow* opinion that addresses materially different facts. In that case, a professor alleged that the denial of a post-termination unpaid appointment at her university was an adverse action. *Id.* The Tenth Circuit rejected that argument as based "on little more than [plaintiff's] own, untested belief that she could remake herself as a private academic," and concluded that "[s]peculative harm does not constitute adverse employment action." *Id. Aquilino* thus stands only for the unremarkable proposition that unsupported conjecture is insufficient for an adverse action. Similarly, *Zienni v. Mercedes-Benz U.S. International, Inc.*, No. 24-13932, 2025 WL 3708825 (11th Cir. Dec. 22, 2025) (per curiam), an unpublished decision from the Eleventh Circuit, involves an alleged harm that the Court believed lacked any evidentiary support. *Id.* at *2 (noting that the harm "was expos[ure] to the risk of discipline" but, according to the court, the employer "never disciplined or threatened to

discipline" the plaintiff); *see also Thomsen v. Romeis*, 198 F.3d 1022, 1027-28 (7th Cir. 2000) (pre-*Muldrow* First Amendment retaliation case where the plaintiff did not show how reprimands, including one that was "explicitly . . . non-disciplinary in nature . . . could lead to future discipline and affect his ability to compete for promotions").

Finally, BMW MC makes a misplaced argument that Dawsey inappropriately relied on her subjective preferences to establish an adverse action. This argument fails, however, because it ignores Dawsey's objective evidence of harm and relies on inapposite, out-of-circuit authority. The jury heard testimony and saw evidence that the transfer would change the terms and conditions of Dawsey's employment. *See supra* I.B. Nothing more was necessary to support the verdict. *See Muldrow*, 601 U.S. at 355, 359 (describing "some harm" standard). Dawsey's perception of those objective changes in the terms and conditions of employment may be considered in conjunction with her actionable discrimination claim. *Id.* at 359 (considering move to less prestigious position with "less involve[ment] in high-visibility matters" to be sufficient harm); *see also Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 780, 787 (6th Cir. 2024) (holding that plaintiff suffered some harm from being "forced to work by himself" in a "lonely"

position), *reh'g denied*, 2024 WL 3205990 (6th Cir. June 17, 2024); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 613 (5th Cir. 2007) (applying pre-*Muldrow* standard, courts could consider whether transfer involved "less interesting" work (internal quotation marks omitted)), *abrogated by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023) (en banc).

Both cases BMW MC cites, meanwhile, depend on the absence of any disadvantageous change to the terms and conditions of employment. *Paterakos v. City of Chi.*, 147 F.4th 787, 796-97 (7th Cir. 2025) (temporary, one-week reassignment during Covid pandemic "to enable social distancing" was not an adverse action); *Gabriel v. DSM Biomedical, Inc.*, 187 F.4th 77, 82 (3d Cir. 2026) (alleged harm rejected as subjective was response to "working for a 'bully'" that court held was better treated as a hostile work environment claim). Indeed, *Paterakos* itself acknowledges that an adverse action may include "humiliating, degrading . . . changes to an employee's work conditions." 147 F.4th at 796 (citation modified).

## II. The district court correctly denied judgment as a matter of law on punitive damages.

BMW MC argues that its decisionmakers did not have the necessary mental state for the jury to award punitive damages. The district court

rejected that argument below, and the evidence in the record supports the jury's verdict.

Under Title VII, as amended, a plaintiff seeking punitive damages must show that her employer acted "with malice or with reckless indifference to [her] federally protected rights." 42 U.S.C. § 1981a(b)(1). "[T]o prove such recklessness, a plaintiff must establish that" a managerial agent "at least discriminate[d] in the face of a perceived risk that its actions [would] violate federal law." *EEOC v. Fed. Express Corp.*, 513 F.3d 360, 371 (4th Cir. 2008) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999)). And the jury only needed to find that one of BMW MC's managers acted with the requisite mental state. *Id.* at 373; *see also EEOC v. SkyWest Airlines, Inc.*, 181 F.4th 536, 546 (5th Cir. 2026).

As the jury found punitive damages appropriate and the district court denied BMW MC's post-trial motion, BMW MC "faces an extremely heavy burden" to show there was insufficient evidence supporting the damages award. *Brinkley-Obu*, 36 F.3d at 351. This Court is "obliged to affirm the district court's ruling unless [it] conclude[s]—viewing the evidence in the light most favorable to the plaintiff, and giving the plaintiff the benefit of all reasonable inferences—that no reasonable jury could have

made the punitive damages award being challenged." *Fed. Express Corp.*, 513 F.3d at 370-71.

BMW MC focuses its challenge to the punitive damages award entirely on the evidence of its decisionmakers' mental state. But evidence of that element is sufficient where a manager "had 'at least a rudimentary knowledge' of the import of a federal anti-discrimination statute." *Id.* at 372-73 (quoting *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 460 (4th Cir. 2002)). Thus, in *Federal Express*, it was enough that a manager "was specifically aware of [the employer's Americans with Disabilities Act ("ADA")] compliance policy[] and had received training from [the employer] on the ADA's compliance requirements."[10] *Id.* at 373; *Lowery v. Cir. City Stores, Inc.*, 206 F.3d 431, 443 (4th Cir. 2000) (evidence that all managers attended seminar "that included education on the federal anti-discrimination laws"); *EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1246 (10th Cir. 1999) (sufficient that manager "was familiar with the accommodation requirements of the

---

[10] *Federal Express* also considered whether the decisionmaker was a manager, the manager acted within the scope of his or her employment, and the employer established a good faith defense. 513 F.3d at 372. BMW MC does not challenge those factors here.

ADA and its prohibition against discrimination and retaliation"). Similarly, the Fifth Circuit has held that the "evidence is sufficient to show malice or reckless indifference if an employee receives training instructing them on the company's harassment policy and relevant law, but the employee nevertheless engages in prohibited conduct." *SkyWest Airlines*, 181 F.4th at 546; *see also Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 440 (5th Cir. 2022) (manager "was trained on Wal-Mart's statement of ethics policy, so she knew not to retaliate").

The jury heard enough evidence to conclude that at least Petrasch acted with the necessary mental state. Petrasch was the Vice President of Human Resources. JA355-56, 947-49. She testified that BMW MC had an antidiscrimination policy—and that the policy prohibited national origin discrimination. JA1028-29. She also received training on that policy, JA1029; in fact, Dawsey testified that Petrasch was "ultimately responsible for administering" it, JA540. Petrasch also was responsible for receiving "charges or discrimination matters." JA540. That far exceeds the knowledge this Court and others have found sufficient. *See, e.g.*, *Fed. Express Corp.*, 513 F.3d at 372-73; *SkyWest Airlines*, 181 F.4th at 546.

BMW MC argues that more was required, but it overstates the necessary showing and overlooks the high standard it must now meet to displace the jury's verdict. It relies on *Duvall v. Novant Health, Inc.*, 95 F.4th 778 (4th Cir. 2024), for the principle that the plaintiff must provide "affirmative evidence" of knowledge. Dkt.17 at 57 (quoting *Duvall*, 95 F.4th at 792). That is true—but it conflates the absence of evidence in *Duvall* with the ample testimony that the jury heard here. In *Duvall*, the plaintiff "offered no evidence as to the training or qualification that [the employer] offered to or required of [the manager], or a comparable executive." 95 F.4th at 792. Instead, the plaintiff in *Duvall* offered only unsupported conjecture that a corporate executive, solely because of his occupation, "had the requisite knowledge." *Id.* Here, the jury heard what was absent in *Duvall*: testimony that Petrasch had been trained on—and, indeed, was responsible for administering—the policy prohibiting discrimination, including national origin discrimination. JA540, 1028-29. BMW MC has not shown that evidence was insufficient to support the jury's verdict.

Nor does *EEOC v. Consol Energy, Inc.*, 860 F.3d 131 (4th Cir. 2017), save BMW MC's argument. BMW MC asserts that *Consol Energy* shows that knowledge of a policy is not enough. Dkt.17 at 60. But that misstates the

case. In *Consol Energy*, which involved religious accommodation, this Court noted that knowledge of a policy is in some cases sufficient to show reckless indifference. 860 F.3d at 151 ("[E]vidence that an employer has at least a rudimentary knowledge of the import of Title VII may in some cases give rise to a reasonable inference that the employer acted with reckless indifference in violating that statute." (citation modified)). But, because the managers in *Consol Energy* "engaged in . . . long negotiations with" the plaintiff about an appropriate accommodation and offered an alternative accommodation, this Court held they did not have the requisite mental state. *Id.*

By contrast, the jury here heard evidence that BMW MC's policy prohibited national origin discrimination, JA1028-29, and that Petrasch, along with other decisionmakers, nevertheless chose to transfer an American employee so they could replace her with a German employee, JA474-77, 824-25. Specifically, Petrasch said that "there was a rule that if the Vice President of Human Resources was a domestic or local that the next line of leadership in Human Resources would have to have a German." JA474. And a jury could find BMW MC and Petrasch applied that rule when they brought a German employee into the TX-64 position, forcing an

American employee into another position—one with a lower function level—because of her national origin. JA337, 474, 493, 506, 824-25.

To prevail, BMW MC must show that no reasonable jury could find that Petrasch acted with a perceived risk of violating Dawsey's federally protected rights, even after considering Petrasch's training on BMW MC's antidiscrimination policy and her role in administering that policy. *See Lowery*, 206 F.3d at 443-44; *SkyWest Airlines*, 181 F.4th at 546-47. It did not meet that burden here.

## CONCLUSION

For all these reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

CHRISTOPHER LAGE
Deputy General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

JEREMY D. HOROWITZ
Assistant General Counsel

s/James Driscoll-MacEachron
James Driscoll-MacEachron
Attorney
EQUAL EMPLOYMENT

OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(602) 661-0014
james.driscoll-maceachron@eeoc.gov

October 14, 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 5,715 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Book Antiqua 14 point.

s/James Driscoll-MacEachron
James Driscoll-MacEachron
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(602) 661-0014
james.driscoll-maceachron@eeoc.gov

October 14, 2026

**CERTIFICATE OF SERVICE**

I certify that on this 14th day of October, 2026, I electronically filed this brief in PDF format with the Clerk of Court via the appellate CM/ECF system. I certify that all counsel of record are registered CM/ECF users, and they will be served through the appellate CM/ECF system.

s/James Driscoll-MacEachron
James Driscoll-MacEachron
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(602) 661-0014
james.driscoll-maceachron@eeoc.gov